## GREENWICH INS. CO. v. N. & M. FRIEDMAN CO.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1905.)

### No. 1,414.

JUDGMENTS—PERSONS BOUND—COMMON DEFENSE BY DEFENDANTS IN SEVERAL SUITS.

A number of insurance companies, which had issued to plaintiff concurrent policies covering the same property and identical in form, united in making a common defense to suits brought against them severally after the destruction of the property. They agreed to share pro rata the costs and expenses of the suits, and appointed a committee to take charge of them, which employed the same counsel in all, and the same defense was set up in each, raising an issue of fact. Their joinder was open and avowed, and well known to plaintiff and its counsel. *Held*, that each had an interest in all the suits and that a final judgment in favor of plaintiff in one suit was conclusive on all.

In Error to the Circuit Court of the United States for the Western District of Michigan.

H. W. Fraser and G. D. Willis, for plaintiff in error.

N. S. Monsarrat, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This is another of the cases growing out of the destruction, early on the morning of July 18, 1901, of the Luce Block, in Grand Rapids, Mich. The occurrence resulting in the destruction of this building and its contents was before us in the case of the Phenix Insurance Company v. Luce, 123 Fed. 257, 60 C. C. A. 655, and in the case of the Liverpool & London & Globe Insurance Company v. N. & M. Friedman Company, 133 Fed. 713, 66 C. C. A. 543. In the first case the insurance was on the building, and in the second on the contents. In each case liability was denied on the ground that the building fell before the fire began, and not as a result of the fire. In both cases the jury found against this contention. The judgments were affirmed by this court. There was also a suit on a policy on the stock of the Friedman Company brought in the state court, that against the Atlas Assurance Company. The same defense was made, that the building did not fall in consequence of fire, but before the fire, with the same result, a verdict and judgment for the plaintiff, which was affirmed by the Supreme Court of Michigan. N. & M. Friedman Co. v. Atlas Assurance Co., 133 Mich. 212, 94 N. W. 757.

The present case, which was one on a policy for $3,000 on the stock, was tried before the court without a jury upon a stipulation of facts and certain evidence tending to show that the plaintiff below had knowledge of the defendant's agreement to share in the expenses of contesting the Atlas and Liverpool & London & Globe cases, and to bear proportionately the costs in case of defeat. Upon this agreed statement of facts and the evidence referred to, the court below found that the defendant was estopped from denying liability under its policy.

The stipulation of facts is as follows:

"The plaintiff is a corporation under the laws of Michigan, and on July 18, 1901, was conducting a department store at Grand Rapids, Mich. That on said day plaintiff had in its said store a stock of goods of the value, after deducting all salvages remaining after the fire hereinafter referred to, of at least $92,827.75, and furniture and fixtures of the value of $5,564.11. That on said July 18, 1901, it had concurrent insurance on said stock of goods to the amount of $100,000 in divers companies, whereof the defendant was one, and including the Atlas Assurance Company, Limited, of London, England, and the Liverpool & London & Globe Insurance Company hereinafter referred to, all of said policies being in the Michigan Standard form, and all containing identical provisions governing the liability of the insurers; the premium rates on all said policies being the same. That on said July 18, 1901, plaintiff held defendant's Michigan Standard form insurance policy in the amount of three thousand dollars ($3,000) on said stock, being the policy above referred to, the material portions of said policy being as follows:

" 'No. 945,715. $3,000.

" 'The Greenwich Insurance Company of the City of New York. In consideration of the stipulations herein named and of Twenty-Seven and no-100 Dollars premium does insure N. and M. Friedman Company, for the term of one year from the first day of February, 1901, at noon, to the first day of February, 1902, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding Three Thousand Dollars to the following

described property while located and contained as described herein, and not elsewhere, to wit: N. & M. Friedman Company, Successor to N. & M. Friedman. Three Thousand Dollars. $3,000.

" 'On their wholesale and retail stock of merchandise, consisting principally of dry goods, cloaks, wraps, carpets, curtains, draperies, fixtures and poles, toys, notions, ladies' and gents' furnishing goods, millinery and piece goods, and other merchandise, not more hazardous; their own or held by them in trust, or on commission, or sold but not removed, and for which they may be legally liable; including packages containing same, and all materials used in packing and shipping goods; all while contained in and under sidewalks adjoining, and in show windows of, the four-story and basement brick and stone buildings, situated at Nos. 70 and 72 Monroe Street.

" 'This Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value with the proper reduction for depreciation however caused, and shall in no case exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. * * *

" 'The sum for which this Company is liable, pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of loss have been received by this Company, in accordance with the terms of this policy. * * *

" 'This Company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war or commotion * * * or (unless fire ensues, and in that event for damage by fire only), by explosion of any kind. * * *

" 'If a building or any part thereof fall except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease. * * *

" 'This policy shall be canceled at any time at the request of the insured; or by the Company, by giving five days notice of such cancellation. If this policy shall be canceled as hereinbefore provided or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this Company retaining the customary short rate; except when this policy is canceled by this Company by giving notice, it shall retain only the pro rata premium.

" 'This Company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance whether valid or not, or by solvent or insolvent insurers covering such property.'

"On July 18, 1901, plaintiff's said stock was damaged or destroyed by fire to at least the net amount of $92,827.75 above salvage, the plaintiff claiming that said loss and damage occurred while said policy was in force, and defendant claiming that such loss and damage by fire occurred after its said policy had ceased to be of any force or effect, by reason of the building containing said stock having fallen without the agency of fire, and before any such fire loss or damage occurred; and this admission shall not be construed as admitting any fire loss or damage while said policy was in force.

"Prior to the commencement of suit herein, after plaintiff had given notice of claim for loss, and before the furnishing by plaintiff to the various insurers of proofs of loss under its said policies, this defendant, together with the Liverpool & London & Globe Insurance Company, and the Atlas Assurance Company, and other companies, whose policies of insurance in like form were held by plaintiff, held a meeting and employed Mark Norris and Albert Crane, hereinafter named, to examine into the circumstances of the fire, and after the proofs of loss were furnished by plaintiff to the various insurers held another meeting, and after collectively canvassing the reported circumstances of plaintiff's claim decided to defend against plaintiff's claim under their policies upon the ground that the building containing plaintiff's stock fell without the agency of fire, and that none of plaintiff's stock was destroyed or damaged by fire until after the building fell. Said insurance companies thereupon agreed

among themselves to pay pro rata to the amounts of their several and respective policies the costs and expenses of such contests, and appointed John H. Law, one of the managers of the Western Department of the Royal Insurance Company, S. A. Rothermel, secretary of the Traders' Insurance Company, and J. P. Hubble, general agent of the Greenwich Insurance Company, a committee to employ counsel on behalf of all contesting companies; said counsel to take charge of and contest all such suits for recovery under policies issued by said contesting companies, as the several and respective companies should direct to be contested, and to apportion among and call for from the several companies the funds necessary to conduct said contests, including such costs of suit as might be taxed against the contesting companies so long as such litigation should continue. Said committee employed counsel to contest all said causes, namely, Albert Crane, Mark Norris, and Russell C. Ostrander, who took charge of said causes and conducted the defense therein under said employment of said committee, and tried the same, under said employment, both in the trial and appellate courts, so far as the same have yet been tried. On or about the 29th day of July, 1901, plaintiff delivered to defendant proofs of said loss under its said policies, in accordance with the terms thereof, and on or about the 7th day of August, 1901, the defendant denied all liability under said policies, for the alleged reason that a substantial part of the building containing the property insured had collapsed and fallen before the destruction of said insured property by fire, and defendant at the same time tendered to the plaintiff the unearned portion of the premium, which the plaintiff had paid on said policies, which tender was by plaintiff refused, but has been kept good by defendant. Like denials of liability and for the same alleged reason as above stated were made by each of said contesting companies represented by said committee, and by said counsel employed by it. Suits for recovery on account of said loss were begun by plaintiff against all said contesting companies (except five companies not herein specifically named) before the trial of said Atlas Assurance Company Case, and against said five companies after the trial of said Atlas Assurance Company Case. Each of said companies, both those sued before and those sued after the trial of said Atlas Assurance Company Case, pleaded in said suits by said counsel the same defense, namely, the defense only set up in said denials of liability.

"The first cause tried was Friedman v. Atlas Assurance Company, above referred to, which involved a policy for $2,000 upon plaintiff's stock. The judgment for damages therein was paid by the Atlas Assurance Company. The costs and expenses of contesting the same, including plaintiff's taxed costs therein, in both the trial and appellate courts, were paid by the committee aforesaid, through assessments made on and paid by all the contesting companies, including this defendant. The defendant herein was not a reinsurer or guarantor to the Atlas Assurance Company, nor liable to it in any other manner or form than herein stated. The manager of the Atlas Assurance Company directed the taking of an appeal in said cause to the Supreme Court. The agreement between said contesting companies contained no express provision, regarding the right of the committee to take an appeal, either denying or affirming such right. The direction to take the two several appeals which were taken were given directly by the Atlas Assurance Company, Limited, and the Liverpool & London & Globe Insurance Company, respectively.

"The second case tried was Friedman v. Liverpool & London & Globe Insurance Company, involving policies issued by said company upon plaintiff's stock aggregating $8,000. The judgment rendered in favor of plaintiff in this cause was affirmed by the United States Circuit Court of Appeals for the Sixth Circuit on November 10, 1904. The judgment in that cause remains unpaid. The defendant herein was not a reinsurer or guarantor to the Liverpool & London & Globe Insurance Company, nor liable to it in any other manner or form than as herein stated. The manager of the Liverpool & London & Globe Insurance Company directed the taking of an appeal therein to said United States Circuit Court of Appeals. The costs and expenses of contesting said cause, both in this court and in the United States Circuit Court of Appeals, are to be paid by or through said committee, by like assessments, as was done in the Atlas Case.

"There are still pending in this court 17 of said insurance suits, in which the defense is so represented by said committee, and in the state court 11 of such suits. Either party may produce on the hearing of this matter such evidence as it may be advised is relevant to the issue herein and not herein agreed upon, so far as the same is competent, relevant, and material. A trial of this cause by jury is hereby waived."

The findings of fact and law made by the court are as follows:

### "Findings of Fact.

"This cause was submitted partly on a stipulation of facts and partly on evidence adduced in court. I find the stipulated facts to be true, and from them and the evidence submitted further find: The plaintiff was on the 18th day of July, 1901, ever since has been, and now is a corporation, under the laws of the state of Michigan, and a citizen of the state of Michigan, and the defendant during said time was, and is, a corporation under the laws of the state of New York, and a citizen of the state of New York. On the 18th day of July, 1901, the plaintiff was insured against loss by fire on its stock of goods situate in the Luce Block, so called, in the city of Grand Rapids, under the defendant's Michigan standard form insurance policy, in the amount of $3,000, on which day said stock of goods burned, and was damaged and destroyed to the net amount of $92,827.75 above salvage. The total amount of concurrent insurance, including this policy, on said stock of goods at the time of the loss, was $100,000 in various companies, among which were the Atlas Assurance Company and the Liverpool & London & Globe Insurance Company, whose policies were in like form with that held by the plaintiff. Proofs of loss were furnished to the defendant and the other insurers on July 29, 1901, in accordance with the terms of said policies, and on or before the 17th day of August, 1901, the defendant, together with other insurers of said risk, denied all liability under said policies.

"Actions were begun against the contesting companies, among which were the defendant, the Atlas Assurance Company, and the Liverpool & London & Globe Insurance Company, and all said companies pleaded in said suits the one and only defense, that the substantial part of the building, containing the property insured, had collapsed and fallen before the destruction of said insured property by fire, and the issues in said action were identical. The first case tried was Friedman v. Atlas Assurance Company, in the circuit court for the county of Kent, state of Michigan, which resulted in a verdict and judgment for the plaintiff, which judgment was affirmed by the Supreme Court of the state of Michigan; and the next case tried was N. & M. Friedman Company v. Liverpool & London & Globe Insurance Company, in this court, in which a verdict and judgment were rendered for the plaintiff, which judgment was affirmed by the United States Circuit Court of Appeals for this circuit. I find there are still pending in this court 17, and in the state court 11, of said cases. I further find that the defendant in this cause, for its own interest, joined with the defendant in the other cases in this court and the circuit court for the county of Kent and state of Michigan in the defense of the case of N. & M. Friedman Company v. Atlas Assurance Company, and in the case of N. & M. Friedman Company v. Liverpool & London & Globe Insurance Company, and that said joinder was open and avowed, and was well known to the plaintiff at and before the time of the trial in this court of the case of Liverpool & London & Globe Insurance Company.

### "Finding of Law.

"As a matter of law, I find that the defendant is concluded and estopped by the judgment in the case of N. & M. Friedman Company v. Liverpool & London & Globe Insurance Company, tried in this court, from denying liability under its policy, and that the plaintiff is entitled to a judgment for $2,784.83 damages, with interest at 5 per cent. per annum from October 6, 1901, and costs of suit to be taxed."

The concluding finding of fact, upon which the foregoing finding of law is based, was obviously framed in view of what we said in Penfield v. Potts, 61 C. C. A. 371, 126 Fed. 475, where the following language was used (page 376 of 61 C. C. A., page 480 of 126 Fed.):

"The doctrine is well settled that one who, for his own interest, joins in the defense of a suit to which he is not a party of record, is as much concluded by the judgment as if he had been a party thereto, provided his conduct in that respect was open and avowed or otherwise well known to the opposite party. The question has once before been before this court in Lane v. Welds, 39 C. C. A. 528, 99 Fed. 286, where the cases are collected."

But it is urged that, even if the law is correctly stated in Penfield v. Potts, the finding of fact referred to is wholly without evidence to sustain it; that neither the stipulated facts nor the evidence afford any support to the finding that the defendant, "for its own interest," joined in the agreement with the defendants in the other cases. It is insisted the defendant had no interest in the result of the suits against the Atlas and Liverpool & London & Globe Companies other than as establishing a legal precedent, and therefore could not properly be said to have an interest in those cases which could legally make the judgments binding upon it by way of estoppel.

We think the court was fully justified in making the finding. It appears there were some 30 cases growing out of the destruction of the Luce Block and its contents. The policies were identical in form. The cases all turned upon the same question of fact: Did the building fall as a result of the fire, or fall before the fire occurred? It was to the interest of both the insurers and the insured that this question be determined without unnecessary delay. The public also had an interest. "Interest rei publicæ ut sit finis litium." Accordingly the insurance companies entered into the agreement described in the stipulation. The defendant was a party to it. By this agreement the defense of all the cases was entrusted to a committee chosen by all the companies. This committee was to select lawyers, supervise the litigation, and apportion the costs and expenses. The joinder of the companies was open and avowed, and the plaintiff knew of it before the Liverpool & London & Globe case was tried. In that case both the committee and the counsel employed acted as the agents of the defendant as well as of the company sued. When that case was taken to the appellate court, it was taken by counsel who represented this defendant as well as the Liverpool & London & Globe Company. Admitting that, under the agreement, this defendant would not be liable for the face of the policy in case of an adverse judgment in a suit against another company, it certainly would be liable, not only for its share of all the expenses incurred in employing counsel, but for its proportionate amount of costs of the litigation, which, of course, would become a part of the judgment. In view of this, and of the agreement of all the companies to make a common defense through common counsel, counsel representing one company no more than every other, although the agreement contained no provision upon this specific point, it seems to us that, if the companies directly affected, the Atlas and the Liverpool & London & Globe, had not seen fit to take the cases up for review as they did, this defendant might have done so. It looks to us

as if it was the intention of the insurance companies to make these cases, one in the state and the other in the federal court, test cases; and we have no doubt that, if they had won, they, and not the insured, would now be invoking the doctrine of estoppel.

No good reason being shown why we should disturb our ruling in Penfield v. Potts, and the findings of the court below appearing to be sustained by the evidence, the judgment is affirmed.