BEYER CO. et al. v. FLEISCHMANN CO.

(Circuit Court of Appeals, Sixth Circuit.
November 11, 1926.)

No. 4585.

**I. Patents ⊜⇒327.**

Defendants in patent infringement suit *held*
bound by decree in prior suit sustaining valid-
ity of patent, by reason of their participation
in defense of such action.

**2. Judgment ⊜⇒675(1).**

Generally, one prosecuting or defending suit
in name of another, to establish or protect
some interest of his own, or openly assisting
in aid of some such interest, to the knowledge
of opposing party, is bound by judgment.

**3. Patents ⊜⇒327.**

Statement of counsel for defendant in for-
mer infringement suit, admitting another's par-
ticipation in defense *held* admissible in subse-
quent suit against such other on question of
conclusiveness of judgment.

**4. Patents ⊜⇒328.**

Patents Nos. 1,148,328 and 1,151,526, for
process for making bread, *held* infringed by use
of defendant's formula, notwithstanding use of
added ingredient.

Appeal from the District Court of the
United States for the Eastern Division of
the Northern District of Ohio; D. C. Westen-
haver, Judge.

Patent infringement suit by the Fleisch-
mann Company against the Beyer Company
and another. Decree for complainant, and
defendants appeal. Affirmed.

Donald M. Carter, of Chicago, Ill. (Park-
er & Carter, of Chicago, Ill., and Day &
Day, of Cleveland, Ohio, on the brief), for
appellants.

Berkeley W. Henderson, of Cleveland,
Ohio (Baker, Hostetler & Sidlo, of Cleve-
land, Ohio, and Mayer, Warfield & Watson,
Frederic P. Warfield, and Leonard A. Wat-
son, all of New York City, on the brief), for
appellee.

Before DENISON, DONAHUE, and
MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. This suit in
equity charges defendants (appellants here)
with infringement of letters patent Nos. 1,-
148,328 and 1,151,526. The patents relate
to a process for the manufacture of bread.
The infringement was alleged to have result-
ed from the manufacture and sale of a yeast
food used in the making of bread. The bill
sets up as ground for the relief sought,
among others, the proceedings in Ward
Baking Co. v. Hazleton Baking Co. (D. C.)
292 F. 202, wherein the two patents were

15 F.(2d)—30

adjudged valid, and alleges that the plain-
tiff herein was the plaintiff in that case, and
that defendants herein were the real parties
defendant in interest in that case. The pro-
ceedings and judgment in that case were
pleaded in bar of defendants' right to ques-
tion the validity of the patents. By joint an-
swer defendants put in issue that plea of ad-
judication, and also denied the other aver-
ments of the bill, presenting the questions:
First, as to whether defendants were in such
privity with the Hazleton Baking Co. Case
as to make the judgment in that case binding
upon them; and, second, if so, whether there
was equivalency in the legal sense between the
process involved in that case and defendants'
present process, or from a broader considera-
tion, whether the later process is an infringe-
ment on the claims of the patents. Upon both
issues the trial court found for the plaintiff.

[1] At the hearing on the first of these ques-
tions the defendants introduced no evidence,
but plaintiff introduced certified copies of
the proceedings and judgment in the former
case. They showed that the main defense
was anticipation by long-continued prior use
by David Beyer, the owner of the Beyer
Company; that in the opening statement
in that case it was said by counsel for plain-
tiff, and not denied, that his understanding
was that the defense was being conducted by
the Beyer Company; that Beyer was pres-
ent throughout the trial and testified for de-
fendant; that counsel for defendant, who
was originally counsel for defendants in this
case, in stating the case for the defense,
among other things said: "There is noth-
ing inventive in the process which they claim
under the first patent. It is not new. We
have used this since 1898. When I say 'we,'
I speak of the Beyer Company. We have
used calcium salts, ammonium salts, and
bromates, and stand ready to prove it, sep-
arately and in combination with other chem-
ical compounds, since 1898;" that the trial
judge in an opinion said: "In fact, the Bey-
er Company has been present at the trial and
assisted in the defense against the charge of
infringement; hence the essential question
remaining is whether the use of Beyer's yeast
food makes defendant liable to plaintiff's
charge;" that an interlocutory decree was
entered sustaining the validity of the pat-
ents, and before the final judgment of like
effect was rendered on August 29, 1924, an
order was entered substituting the Fleisch-
mann Company as plaintiff for the Ward
Baking Company.

[2, 3] The general rule is that one who
prosecutes or defends a suit in the name of

another, to establish or protect some interest of his own, or who openly assists in an action in aid of some such interest, to the knowledge of the opposing party, is as much bound by the judgment as he would be if he had been a party of record. Penfield v. Potts & Co. (6 C. C. A.) 126 F. 475, 61 C. C. A. 351; Greenwich Ins. Co. v. Friedman Co. (6 C. C. A.) 142 F. 944, 74 C. C. A. 114; Foote v. Parson, etc. (6 C. C. A.) 196 F. 951, 118 C. C. A. 105; Southern Pacific R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355; Souffront v. La Compagnie Des Sucreries, 217 U. S. 475, 30 S. Ct. 608, 54 L. Ed. 846. Upon an application of this principle, the lower court found that defendants were bound by the decree in the first case. It is insisted in their behalf that the finding is without warrant of evidence. Objection is also made to the admission in evidence of the opening statements of counsel for the Baking Company in the former case on the ground that they were incompetent because of a purely hearsay nature.

Under different or the usual circumstances this latter objection might present a question of substantial merit. But, taken in connection with the admitted use of the Beyer Company's product, its natural interest in the first case, and the presence at the trial of Beyer, the president and sole owner of that company, the statements were entitled to some consideration in determining whether in fact Beyer was an interested party to that proceeding. Of like consequence, perhaps with added force, because of a common interest, to say the least, was the use of the word "we" by counsel for defendant, followed by the explanation that he referred to the Beyer Company. We do not think that the definition of that particular reference had the effect of excluding the Beyer Company from the meaning of the term as thereafter used, except where expressly included. As to the sufficiency and effect of the evidence, it is enough to say that the facts referred to, in our opinion, constitute a showing of such participation by defendants in the former proceedings as to make the judgment therein binding upon them.

[4] The second issue is in a measure simplified by a comparison of the patented and alleged infringing processes. Plaintiff's first patent shows a bromin compound operating with the yeast, flour, and other ingredients of the dough batch. It is less specific as to quantities and associated elements than the second patent, which claims a "composition of matter for use, associated with yeast, in the making of leavened bread, flour contain-ing in admixture therewith ammonium chloride, calcium sulphate, and potassium bromate, substantially as described" in the specifications. The last-mentioned ingredient is the new and efficient element in both patents, being associated definitely in the second with the other two ingredients in substantially the proportion described in the specifications. This new ingredient is also used by defendants, and, except for an added ingredient, its new formula C more nearly approximates the later patent of plaintiff than does the infringing product in the Hazleton Case. Defendants have increased in their newer formula the quantity of ammonium chloride, and have brought into it calcium carbonate, which they claim possesses functions and produces results that make an entirely new process.

Illustrative formulas of compounds given in the specifications of the patents, and made according to the infringing product in the Hazleton Case and plaintiff's new product, are shown in the record. The evidence touching the chemical workings of the various ingredients of these formulas when in contact with their associated elements is somewhat involved and technical. Much of it, as respects functions and results, is conflicting. The ultimate fact, however, we think, is that the difference in substance—not in the functioning of the substance—between formula C and defendants' former process is the added ingredient, calcium carbonate.

It is claimed by defendants that this ingredient modifies the action of all associated elements, producing a novel process. One of the advantages claimed for it is that the dough can be withheld from the oven for a long time without spoiling, which cannot be done, it is said, with plaintiff's dough. Perhaps this is another way of saying, what is also claimed as a difference, that the calcium carbonate neutralizes the excess of acidity caused by the increased quantity of ammonium chloride, and thus prevents the speeding up of the fermentation and the too rapidly maturing of the dough. These theories, with others advanced by defendants as indicating novelty in their formula, are disputed. In our opinion they are not sustained by the evidence.

Nor are we impressed with the contention that the larger proportion of ammonium chloride, of itself or in connection with the calcium carbonate, produces a formula that is chemically different in its workings from the older process. We concur in the view of the court below that the added quantity of

calcium carbonate was introduced to neutralize the added quantity of ammonium chloride, and the only purpose of using them was to practice, if possible without infringement, the process shown by plaintiff's patents.

Judgment affirmed.