## ZIP MFG. CO. et al. v. PEP MFG. CO., Inc.

Circuit Court of Appeals, Sixth Circuit.
July 6, 1928.

No. 4839.

Patents ⊕�441327(14)—Judgment in infringement suit held binding on purchaser of assets of corporation, which was real defendant, and corporation organized by such purchaser.

Where corporate manufacturer of grinding compound undertook defense of infringement suit against seller of such compound, and where pending such suit the corporation became bankrupt and its assets were sold to one who continued the defense of infringement suit and organized a corporation to continue the manufacture of the grinding compound, held, adverse decree in such infringement suit was binding on purchaser lis pendens and corporation organized by him.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Patent infringement suit by the Pep Manufacturing Company, Inc., against the Zip Manufacturing Company and others. From the decree rendered, the defendant named alone appeals. Reversed, and cause remanded, for decree in accordance with opinion.

Edmund Rogers, of Denver, Colo., and Harold R. Moore, of Cleveland, Ohio (Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for appellant.

John F. Oberlin, of Cleveland, Ohio (Fay, Oberlin & Fay, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON and MACK, Circuit Judges, and MOINET, District Judge.

DENISON, Circuit Judge. The Zip Company is the owner of the Werder patent, No. 1,353,197, applied for August 8, 1918, and issued September 21, 1920, for a grinding compound which finds its chief utility in grinding valves of automobile engines; also the Werder improvement patent No. 1,534,196, issued April 21, 1925. The Pep Company owns the Holmes patent, No. 1,380,383, applied for September 27, 1920, issued June 7, 1921, for a similar compound. Holmes had been in the employ of the Zip Company, selling its product, which was called "Zip." Leaving that employment, he applied for a patent upon his compound, which he considered an improvement and which he named "Pep," and organized the Worcester Abrasive Company in New Jersey to manufacture and sell it. One Pusch became a general agent for the Pep Company, distributing its compound in Colorado.

The Zip Company brought an infringement suit against Pusch in that district, in April, 1921. It does not expressly appear, although it is a very natural inference, that the Worcester Company at once assumed the defense of this Colorado case. However that may be, about this time Holmes had ceased to be connected with the Worcester Company, and Ralph Root had become interested in it and was its president and/or general manager. The Worcester Company then, in April, 1922, went into bankruptcy, and at a trustee's sale, in June, 1922, Root became the purchaser of all its assets, including the Holmes patent—all of these assets being collateral to and useful only for a continuation of the business of making and selling Pep, supposedly under the Holmes patent.

In June, 1922, Root organized the Pep Manufacturing Company, under the laws of Delaware, and conveyed to it all the assets of the business, including the Holmes patent, which he had received by transfer from the trustee in bankruptcy, receiving in exchange therefor its entire capital stock. The same business was thereafter carried on under the name of the Pep Company. In May, 1923, the infringement case came on for trial. Pusch had paid no attention to it. The actual trial, to the knowledge of the plaintiff,

was under the dominance of Root, as if he were the defendant. No change was made in the party defendant of record. Whether the plaintiff knew that the Worcester Company had gone out of business, and had been succeeded by Root, and he by the Pep Company, does not appear. Upon the trial the District Court dismissed the bill, holding that Werder had been anticipated in his invention by Hawes. On appeal, the Circuit Court of Appeals reversed this decree (2 F.[2d] 828), found that the Hawes anticipation was not established, and that there was infringement, and remanded the case accordingly.

On February 1, 1925, the Pep Company commenced suit in the court below against the Zip Company, obtaining sufficient service in the Northern district of Ohio, and alleging infringement of the Holmes patent. In its answer, the Zip Company counterclaimed, alleging infringement of both Werder patents, and setting up the decree in the Eighth Circuit Court of Appeals as an adjudication regarding the first patent and its infringement. Upon the trial, the court below held that the Holmes patent was invalid and the second Werder patent not infringed; that the first Werder patent was anticipated by Hawes; and that the Colorado decree as to the first Werder patent was not res judicata, because it did not appear that the Pep Company, the new corporation, had participated in the defense, to the knowledge of the plaintiff. Accordingly, the bill of complaint and the answer in the nature of a cross-bill were dismissed. The Zip Company alone appeals.

As to the first Werder patent: We find it unnecessary to consider the alleged anticipation by Hawes. The Circuit Court of Appeals, in Colorado, held it was not established, save by that merely oral and unsupported proof, which is insufficient for such a purpose.[1] The court below in the present case found such support in the written record of sufficiently early sales made by Hawes of a compound he called "Volcano," and it appeared that Volcano was and for some time before the trial had been the equivalent of Zip. However, the claim that, at the essential early date, Volcano was the equivalent of Zip, has nothing to support it excepting Hawes' oral testimony. Any documentary evidence that he had sold, at this time, something which he called "Volcano," is plainly insufficient to meet the rule of proof required in patent cases. There were circumstances strongly indicating that the original Volcano was differently compounded, and that Holmes changed its composition at some later date so as to make it like Zip.

We do not pursue this subject further, because we are satisfied that the Pep Company is bound by the Colorado decision. When Root bought the assets of the Worcester Company, he knew that this suit was pending, which, whatever its form, was practically directed against the assets and business of the Worcester Company. If the Werder patent was valid, as claimed, the compound, Pep, could not be made or sold for many years to come. Root was a purchaser lis pendens, and, under the familiar rule, whenever he, as the manufacturer and with the knowledge of the plaintiff, assumed the defense of the suit brought against the selling agent, he became a real party defendant. Beyer Co. v. Fleischman Co. (C. C. A. 6) 15 F.(2d) 465. Root thus being the real defendant, the Pep Company, organized solely by him, and which issued its entire capital stock in exchange for the business and rights which, as against him, were thus burdened with this suit, was a purchaser lis pendens, with all the knowledge which Root had, and would be bound by the decree when later entered. Merriam Co. v. Saalfield (C. C. A. 6) 190 F. 927, 932. And see Siemens Co. v. Duncan (C. C. A. 7) 142 F. 157.

There is only one imperfection in the steps leading to this result. Root's actual participation in the trial, plaintiff's knowledge of which at that time is proved, was in May, 1923. He had organized the Pep Company and made his conveyance to it in June, 1922. It therefore does not expressly appear that in June, 1922, he had so become a party to the pending suit by notice to the plaintiff that his vendee of the subject-matter would thereupon become privy thereto; but we think this imperfection is not fatal. In view of the fact that the Worcester Company had been out of business and Root had been its successor for a year while this case was pending, and that Pusch, the nominal defendant, had left the state and paid no attention to the case, it is reasonably certain that Root had assumed its defense long before he organized the Pep Company, and so was, in fact, the actual party defendant.

The additional essential element—that plaintiff should know of the practical substitution of an actual for a nominal defendant —is required to make the estoppel mutual. If Root was the real beneficial party, we do

---

[1] We think the Eighth Circuit Court of Appeals did not intend to refuse to consider the Hawes defense, but that its comments referred to other defenses not properly pleaded. Anticipation by Hawes was pleaded.

not see how the Pep Company, Root's lis pendens vendee, standing in his shoes, chargeable with all his knowledge, and ready to take the benefit of an affirmance, if there was one, should escape the burden of an adverse decree merely because notice to plaintiff of Root's defensive interest was not given until after the organization of the Pep Company. Root was making the defense in its interest, even though, in order to protect his conveyance, he was paying the cost himself. Notice to plaintiff that he was the real party defendant was, for the purposes of this question, notice that his lis pendens vendee, if there was one, was likewise interested. For these reasons we hold that the Pep Company was bound by the Colorado adjudication.

As to the second Werder patent: We see no reason to disagree with the trial court in its holding that there was no infringement; indeed, we do not find that the assignment of error on this point is argued.

We understand that the first claim of the first Werder patent may be construed as specific, calling for starch as one of the ingredients, and the second claim as relatively generic, calling for an ingredient which is glutinous in the sense in which starch is glutinous.

The decree is reversed, and the case remanded for the entry of a new decree, in accordance with this opinion. It should direct the master to find a reasonable royalty, in order to permit the adoption of that measure, if the court should think it appropriate.