# Williams, Receiver, v. Lumbermen's Insurance Company of Philadelphia

*Thomas Raeburn White*, for plaintiff.

*William A. Gray*, for defendant.

ALESSANDRONI, J., January 22, 1937.—The Perkiomen Trunk and Bag Company, Inc., was insured for the amount of $403,000 with 26 different insurance companies, and liability on the policies was contested by all the companies. After the fire the company went into receivership and the insurance companies made a common investigation of the fire, the books and records of the

trunk and bag company, appointed a joint committee, and decided to defend the claims. When the case at bar was called for trial it was agreed that the case following it on the trial list be tried, namely, that of the Southern Mutual Insurance Company. This trial resulted in a verdict for plaintiff. The judgment entered upon the verdict was subsequently sustained in the appellate courts. Plaintiff then amended its statement of claim so as to allege that defendant had coöperated in the defense of the Southern Mutual Insurance Company case and, therefore, the decision of that case was res adjudicata as to this case. The matter then came before us solely on the question of res adjudicata. Upon a consideration of the pleadings and the testimony offered the court makes the following

*Findings of fact*

1. The Perkiomen Trunk and Bag Company, Inc., a Pennsylvania corporation, suffered a loss by fire on December 17, 1930, at which time the company was insured in 26 separate insurance companies in varying amounts for a total sum of $403,000.

2. Subsequent to the fire, receivers were appointed for the Perkiomen Trunk and Bag Company, Inc., and separate suits instituted against all the insurance companies, of which this suit is one.

3. All of the insurance companies entered into an agreement to make a joint investigation of the cause of the fire and all facts pertaining to their liability, employed common counsel and named a committee to report as to the progress of the case, it being agreed that the companies would bear the expenses of investigation and trial, counsel fees, etc., in proportion to their respective interests. Similar affidavits of defense were filed in all the cases.

4. When the case now before us was called for trial it was agreed that the case of the Southern Mutual Insurance Company of Lancaster County, Pa., be substituted

for it and the case was tried in the Court of Common Pleas No. 2 of Philadelphia County, and resulted in a general verdict in favor of plaintiff and a special verdict that the actual loss and damage caused by the fire was $352,980.83. The case was appealed to the appellate courts and judgment for plaintiff affirmed.

5. It has been the practice in Philadelphia for many years, where various fire insurance companies are concerned in the same fire loss, to coöperate in the investigation and defense of the trials of said cases and to share the expenses proportionately, exclusive of judgments and record costs.

6. A total assessment in the amount of 3 percent has already been made against the various companies for the defense of these actions. The expenses of investigation, trial, etc., of the Southern Mutual Insurance Company case, exclusive of the judgment and costs of record, were paid out of the common fund.

7. Defendant company, at the time of the meeting of the representatives of the various insurance companies to decide on a course of action with regard to this particular fire loss, stated that it would handle its own case and settle or contest it as it chose. It was expressly understood that the committee was appointed merely to receive reports on the progress of the cases and disseminate them with no authority or power to settle or control defendant's case.

8. Defendant company had nothing to do with the preparation of the case against the Southern Mutual Insurance Company, did not control the proceedings in that action, nor did it take any active part in the trial of the case.

9. The Lumbermen's Insurance Company of Philadelphia had no legal right to take an appeal from the judgment entered against the Southern Mutual Insurance Company and took no part in the prosecution of the appeal in that case.

10. The Lumbermen's Insurance Company of Philadelphia is not bound to pay any part of the judgment obtained against the Southern Mutual Insurance Company, did not pay any part of said judgment, and there was no agreement or understanding that the Southern Mutual Insurance Company case was to be considered as a test case.

11. Neither plaintiff herein nor defendant herein regarded the case against the Southern Mutual Insurance Company as a test case, either at the time of its trial or subsequently on appeal. Defendant had no financial interest in the Southern Mutual Insurance Company case.

12. Defendant company has always had the right to choose its own attorneys and to compromise or defend this action regardless of any action that had been taken by any of the other insurance companies.

### Discussion

While the question before us on the application of the doctrine of res adjudicata is not free from difficulty a careful analysis of the testimony, the doctrine itself, and the reasoning of the decisions bearing on the question convinces us that plaintiff has failed to bring this case within the narrow confines of res adjudicata. The testimony shows that the arrangement made by the companies for a common investigation and a sharing of the expenses of that investigation in the trial of the various cases in proportion to the interests of the respective companies is an agreement of convenience and economy which has been adopted for practical reasons in this locality for some time. The Lumbermen's Insurance Company of Philadelphia expressly retained complete control of its own case at all times, and refused to abide by any action that might be taken by the other companies with respect to their cases. The testimony is absolutely devoid of any evidence indicating that defendant company had any control over the management or defense of the

Southern Mutual Insurance Company case, or the appeal that followed.

Plaintiff does not contend that there was an express agreement that the Southern Mutual Insurance Company case was to be a test case; nor that either of the parties to this action intended to be bound by the decision of that case during the course of its litigation. Plaintiff's contention rests solely on the ground that the course of conduct of defendant company brings it within the doctrine of res adjudicata. Bearing in mind that defendant at all times exercised exclusive control and management of its own case, and at no time endeavored to exercise control of any of the other cases, the inapplicability of the doctrine of res adjudicata is clearly manifest.

Res adjudicata exists where the four following conditions concur:

"(1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made": Bucks v. American Cigar Box Lumber Co., 112 Pa. Superior Ct. 193, 197.

While there may well be a question whether the causes of action are identical when the actions are predicated upon 26 separate contracts of insurance, plaintiff's contention reaches an insurmountable barrier in endeavoring to establish an identity of the persons and parties to the action. It is obvious, and admitted by plaintiff, that the parties in this action are not the same as in the prior action, nor is there any privity between this defendant and the prior defendant, the Southern Mutual Insurance Company. Privity has been defined by the Supreme Court of the United States in Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U. S. 111, 128, as follows:

"What is privity? As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the same right of property. *Litch-*

*field* v. *Goodnow*, 123 U. S. 549. The ground upon which privies are bound by a judgment, says Prof. Greenleaf, in his work upon Evidence, 13th ed., vol. 1, §523, 'is, that they are identified with him in interest; and wherever this identity is found to exist, all are alike concluded. Hence, all privies, whether in estate, in blood, or in law, are estopped from litigating that which is conclusive upon him with whom they are in privity.' "

Judged in the light of this definition there is no privity, for there was no identity of interest between this defendant and the Southern Mutual Insurance Company in the cause of action litigated in the prior case. Concededly this is the case, but plaintiff seeks to give the word privity the broader interpretation which includes those persons who by assuming the defense of litigation have bound themselves by the result thereof.

The rule is recognized that:

"A person who is not made a defendant of record and is not in privity with a party to the action may, as a general rule, subject himself to be concluded by the result of the litigation if he openly and actively, and in respect to some interest of his own, assumes and manages the defense of the action, although there is authority to the contrary. But to bring about this result it is necessary that the person so intervening should do so for the assertion or protection of some interest or right of his own, or to escape some ultimate liability on his own part; that he should defend the action openly and avowedly and with notice to the adverse party; and that he should be practically substituted for defendant in the management and control of the case, as it is not sufficient to bind him that he merely advised or aided in the trial, gave evidence, cross-examined witnesses, or joined in an appeal, or that he employed and paid defendant's attorney or otherwise contributed to the expense": 34 C. J. 1006, §1427.

Under the testimony and in the light of this rule we do not perceive that defendant has bound itself by the result

of the prior action, for it has not exercised any control or right of management of the prior case, and in fact had no financial interest in the prior case. The only interest which defendant company could have had in the Southern Mutual Insurance Company case was as a precedent for its own. (See also Pennsylvania cases cited in the footnotes to the foregoing citation.)

The primary inquiry in the class of cases relying upon a course of conduct with reference to the trial of a case for its conclusive effect against a party, is whether that party had an active substantive interest in the subject matter of that litigation and exercised a measure of control over the conduct of the case. These elements are lacking in the case before us and preclude the application of the doctrine. The mere fact that the companies cooperated in conducting their investigations, employing common counsel and prorating expenses, did not give them an actual monetary interest in the subject of such litigation, or the right of control. Moreover, such right of control is expressly negatived by the refusal of this defendant to be bound by the action of any of the other companies, as well as by its declaration that it would exercise sole and absolute control of its own case at all times. The employment of common counsel did not make the individual company a party to any decision of those attorneys with reference to any particular case.

The Pennsylvania cases cited by plaintiff, when analyzed, are inapplicable. Careful study of the facts and language employed in most of them supports the decision that we have here reached. In re Lightner's Estate, 187 Pa. 237, a trustee of two funds for two different individuals invested the entire amount of the trust in a venture which resulted in serious loss. One of the cestuis que trustent brought suit against the trustee and lost the action. The Supreme Court ruled that this decision was not res adjudicata of an action brought by the other cestui que trust. See also Stonecipher v. Keane, 268 Pa. 540,

Walker v. City of Philadelphia, 195 Pa. 168, and Rittispaugh v. Lewis et al., 103 Pa. 1. These cases sustain the general rule that in order to be concluded by a judgment one must be a party to the suit or what is equivalent thereto, with the right to control the proceedings and take an appeal.

There are no cases exactly on point in this jurisdiction, but the leading and best reasoned case on this issue is that of the Supreme Court of the United States in Bigelow v. Old Dominion Copper Mining & Smelting Co., supra, p. 126. There, Bigelow and one Lewisohn had been engaged in a common enterprise as promoters. A suit to recover secret profits realized by Lewisohn was instituted in New York, and was terminated in Lewisohn's favor. An action was also started in Massachusetts against Bigelow on the same cause of action and judgment obtained against him in a sum exceeding $2,000,000. Bigelow contended that the decision in the case of Lewisohn was res adjudicata as to his case. The Supreme Court of the United States ruled otherwise, although there was a joint relationship, namely that of joint tortfeasors, involved. The following reasoning of the Supreme Court is irrefutable:

"To conclude Bigelow by the New York judgment, it must appear that he was either a party or a privy. That he was not a party to the record is conceded. He had no legal right to defend or control the proceedings, nor to appeal from the decree. He was, therefore, a stranger, and was not concluded by that judgment as a party thereto. That he was indirectly interested in the result because the question there litigated was one which might affect his own liability as a judicial precedent in a subsequent suit against him upon the same cause of action is true, but the effect of a judgment against Lewisohn as a precedent is not that of *res judicata*, and the Massachusetts court was under no obligation to follow the decision as a mere judicial precedent. Nor would assistance in the defense of the suit, because of interest in the decision as

judicial precedent which might influence the decision in his own case, create an estoppel as to Bigelow. *Stryker* v. *Goodnow*, 123 U. S. 527. Also *Rumford Chem. Works* v. *Hygienic Chem. Co.*, 215 U. S. 156.

"But it is said that if Bigelow was not in every sense a party, he was privy to Lewisohn, who was, and that the estoppel of the adverse judgment in the suit against Lewisohn protected Bigelow as well.

"But would that judgment, if it had been for the plaintiff in that case, have bound Bigelow in a subsequent suit by the same plaintiff upon the same facts? If not, upon what principle may he claim the advantage of it as a bar to the present suit? The cause of action was one arising *ex delicto*. It was several as well as joint. The right of action against both might have been extinguished by a settlement with one, or by a judgment against one, and satisfaction. But the claim has come in substance to this, that although the plaintiff had a remedy against Lewisohn and Bigelow severally or jointly, a failure to recover in an action against one is a bar to his action against the other, the facts being the same, although there has been no satisfaction for the injury done. The only basis upon which such a result can be asserted is that Bigelow would have been bound by the judgment if it had been adverse to Lewisohn, and may, therefore, shelter himself behind it since it was favorable to his joint wrongdoer.

"It is a principle of general elementary law that the estoppel of a judgment must be mutual. *Railroad Co.* v. *National Bank*, 102 U. S. 14; *Keokuk & W. Railroad* v. *Missouri*, 152 U. S. 301; Freeman on Judgments, §159; Greenleaf on Evidence, 13th ed., vol. 1, §534. The mutuality of estoppel by judgment is fully recognized in both the New York and Massachusetts decisions: *Atlantic Dock Co.* v. *New York*, 53 N. Y. 64; *Brigham* v. *Fayerweather*, 140 Massachusetts, 411, 415; *Nelson* v. *Brown*, 144 N. Y. 384."

The foregoing quotation clearly discloses the distinction between an indirect interest in the result of a case by virtue of the fact that it may be a judicial precedent in a subsequent suit, and a real substantive interest in the subject matter of the dispute which brings parties into privity. A case exactly identical with the facts in this case arose in Walz v. Reliance Ins. Co. of Phila., 221 Mich. 345. In that case 58 insurance companies were involved and a verdict rendered in the first case was sought to be invoked against the Reliance Insurance Company under the doctrine of res adjudicata. The court, in refusing to sustain the plaintiff's contention, stated:

"We think a joinder of defendants in a situation like the one at bar could be accomplished by the acts and conduct of the parties, but the joinder must be open, avowed, known and understood by the parties so that a judgment will be conclusive on all. And, a party to be so bound—'must have been directly interested in the subject matter of the proceedings—with the right to make defense, to adduce testimony, to cross-examine the witnesses on the opposite side, to control, in some degree, the proceedings, and to appeal from the judgment.' 10 R.C.L. p. 1117."

To the same effect see Andrews et al. v. National Foundry & Pipe Works, Limited, 76 Fed. 166.

The latest Federal case on this subject is that of Hinkley Motors & Parts Corp. v. General Insurance Company of America, 53 F.(2d) 1068, 1070. The same question under similar facts arose therein, and the court held that the doctrine of res adjudicata did not apply, as sole and absolute control and management of the defense was retained by defendant, thus:

"To hold otherwise would, I think, be to stretch the doctrine of res adjudicata as embodied in the Columbia Insurance Company Case beyond its breaking point. For here, there was, apparently, nothing further between the defendant insurance companies than an arrangement,

based on convenience and economy, whereby the expense of preparation for the defense of the actions brought separately for the same fire was to be shared by two defendants who were otherwise wholly independent, and the two actions were to be tried by the same firm of attorneys who were to be severally employed by the defendants—obviously sensible strategy.

"It would be most regrettable, I think, if, through fear of such results as the plaintiff seeks to impose on this situation, litigants should be deterred from making such mutually useful agreements as that made by the insurance companies in the two actions here under consideration."

Plaintiff relies heavily upon two decisions in the Federal court preceding the Hinkley case, both of which are distinguishable from the facts of the case at bar. The first is that of Columbia Insurance Company of New Jersey et al. v. Mart Waterman Co., Inc., 11 F.(2d) 216, (to which reference is made in the Hinkley case) wherein the insurance companies entered into a written agreement to act together in all the cases and pay all the expenses and judgments obtained in all the proceedings pro rata. No one was permitted to act independently or withdraw, or settle its suit. without prior permission and after conference. It is obvious that the doctrine was properly invoked in that case, for each party was liable for its proportionate part of each judgment and hence had a substantive interest in each case and was in privity therein. Moreover, the conference composed of all the companies had absolute control and management of each and every case. Neither of these factors appears in the case at bar.

The second case is that of Greenwich Ins. Co. v. N. &. M. Friedman Co., 142 Fed. 944. While the facts in that case were somewhat similar to those now before us, the court therein found that there was an agreement to make the case a test case and, therefore, there existed an express

agreement to be bound by the result of the first proceeding. This element is lacking in the case at bar, and without it the reasoning in that decision cannot be adopted by this court, for it has not been followed in subsequent Federal decisions: See Hinkley Motors & Parts Corp. v. General Insurance Company of America, supra.

It has been decided in numerous cases that estoppels to be good must be mutual. In Bigelow v. Old Dominion Copper Mining & Smelting Co., supra, p. 131, the court said:

"The reasons upon which these decisions rest is that there can be no estoppel arising out of a judgment, unless the same parties have had their day in court touching the matter litigated, and unless the judgment is equally available to both parties."

It would be extravagant to presuppose that if the decision in the Southern Mutual Insurance Company case had been against plaintiff the latter would have been precluded from prosecuting the other actions. It would be equally unreasonable to hold that if a group of holders of insurance policies having separate interests suffered a loss from the same fire, and made a common investigation, a judgment against one of them would be binding against the rest. The element of mutuality is lacking, and, therefore, the doctrine fails of application. As a matter of fact, none of the parties or the respective counsel considered the decision of the Southern Mutual Company case as conclusively binding upon the other cases at any stage of its litigation.

### Conclusions of law

1. The doctrine of res adjudicata does not preclude this defendant from setting up a defense on the merits of the case, as the decision in the Southern Mutual Insurance Company case was not conclusive upon it.

2. The Lumbermen's Insurance Company of Philadelphia did not exercise control of or direct the management of the Southern Mutual Insurance Company case, was not substantively interested in that case nor a privy

to it, and therefore, the judgment in that case is not conclusive upon it.

*Decree*

And now, to wit, January 22, 1937, for the foregoing reasons, the question of res adjudicata is decided in favor of defendant and against plaintiff.