## COLUMBIA INS. CO. OF NEW JERSEY et al. v. MART WATERMAN CO., Inc.*

(Circuit Court of Appeals, Second Circuit. March 8, 1926.)

No. 217.

1. Judgment ⬳675(1)—One openly prosecuting or defending another's suit, or aiding therein, to protect his own interest, is bound by judgment therein.

One who prosecutes or defends suit in name of another, or assists therein, to protect his own interest openly and to knowledge of opposing party, is bound by the judgment therein.

2. Courts ⬳372(8)—Extent to which one aiding another's suit to protect his own interest is bound by judgment therein is matter of general law, and state court decisions are not controlling on federal courts.

Extent to which one aiding in another's suit to protect his own interest is bound by the judgment therein depends, not on local law or on statute, but on general law, in which decisions of state courts are not controlling on federal courts.

3. Estoppel ⬳52—Estoppel results from something which law treats as so conclusive an admission that it cannot be controverted by party making it.

Estoppel results from something which law treats as an admission of so high and conclusive a nature that party making it is not allowed to aver against it, or offer evidence to controvert it.

4. Judgment ⬳678(4)—Judgment against three of nine fire insurers, defending action on fire policies under pooling agreement, held binding on other six, not parties, because of privity of contract, in subsequent action against them in another district.

Where nine fire insurers, under pooling agreement to act together in defending any suits by plaintiff on policies issued on plaintiff's property, and to divide cost of litigation pro rata, aided in defense of action against

*Certiorari denied 46 S. Ct. 486, 70 L. Ed. ——.

three of them, held, that judgment against such three was binding on all as privies to suit and judgment, and facts found were binding on insurers not parties thereto in subsequent action in another district.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Mart Waterman Company, Inc., against the Columbia Insurance Company of New Jersey and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Waterman Company had a warehouse in New York City. The goods therein were insured against fire for $400,000, distributed among nine insurance companies. A disastrous fire occurred in Waterman's warehouse, and in this suit six of the insurers are plaintiffs in error and were defendants below in an action upon their policies to recover damages for said fire. The other three insurers were cotemporaneously sued in the Eastern District of New York, the cause of action being identical. Defense was made along lines indicated in Waterman Co. v. Liverpool & London & Globe Ins. Co., Limited, of Liverpool, Eng. (D. C.) 287 F. 267. Waterman Company, however, had verdict and judgment, and that decision (Liverpool, etc., Ins. Co. v. Mart Waterman Co. [C. C. A.] 5 F. [2d] 1017) was affirmed on March 2, 1925.

At that time this cause had not been reached for trial, although the summons issued June 10, 1922. At or before the trial in the Eastern District, Waterman Company learned that all nine insurers were united in defense of both actions and later it became known that they had entered into a "pooling agreement." This is a document dated June 22, 1922, but actually signed by the nine insurers at divers times between its date and July 31, 1922. It reads as follows:

"It is agreed by and between the subscribers hereto, the insurers of the stock of Waterman Company as above, that they will act together, through the loss committee, in defending the suits which have been brought, and that no office or officers will, independently of the others, enter into any negotiations for a settlement, or take steps to withdraw from the joint action which has been begun, without serving due notice, upon all so that there may be a further conference.

"The understanding is that the entire expense of the case, including the cost of the investigation, litigation, and any judgments rendered against any individual company or companies, which it may be considered ad-

visable to pay during the course of litigation, will be shared on a pro rata basis.

"This agreement covers only the insurance companies, parties thereto, and under no circumstances is it to inure to the benefit of the assured."

It is admitted that the jury in the Eastern District assessed Waterman Company's damages in that case by ascertaining the value of the goods destroyed and awarding against the three insurers sued in that case the same proportion of value that the three policies bore to the aggregate of the nine policies; and of this method of ascertainment there was no complaint.

Immediately upon the affirmance by this Court of the Eastern District judgment, Waterman Company filed by leave of court in the present Southern District action a "supplemental complaint," alleging in substance: That all the issues raised by the pleadings herein were fully litigated and determined in said Eastern District action; that the complaints in the two actions were substantially identical and so were the answers; that the same attorneys represented the three defendants in Brooklyn who represented the six defendants in New York City; that the defendants in the two actions had for their own interest joined in the defense of the Eastern District action and in the prosecution of the writ of error to the judgment therein; that the nine defendants had intrusted investigation and defense of Waterman Company's claim upon all the nine policies to the "loss committee" referred to in said pooling agreement; that said committee had selected the attorneys for the several defendants, had controlled the conduct of the defense in both actions, and that the joinder of the defendants herein and of the defendants in the Eastern District action in the defense of both actions "was open and avowed, and known to the plaintiff."

Further, the supplemental complaint alleged that the judgment entered in the Eastern District of New York "constitutes an adjudication binding upon the defendants in this action upon all the issues involved herein, and conclusively establishes the liability of the defendants herein for their respective proportionate shares of the damage found by the jury in said action."

The answer to the supplemental complaint denied in substance nothing but the pleaded conclusions of law. The case having gone to trial on the supplemental pleadings, the court below directed verdict against the several defendants for whatever proportion of the value of the insured goods, as found

by the Eastern District jury, each defendant's policy bore to $400,000. Thereupon the six insurers took this writ.

Fox & Weller, of New York City (Julius M. Mayer, Hugo Wintner, Robert J. Fox, and Robert P. Schur, all of New York City, of counsel), for plaintiffs in error.

Hughes, Rounds, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., Thomas L. Ennis, and Jacob Gould Schurman, Jr., all of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). To decide this cause it would be enough to cite authority both ruling and persuasive in the courts of the United States.

[1] One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment as is a party to the record. Souffront v. La Compagnie, etc., 30 S. Ct. 608, 217 U. S. 475, 54 L. Ed. 846; citing Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; Penfield v. Potts, 126 F. 475, 61 C. C. A. 371; Greenwich, etc., Co. v. Friedman, 142 F. 944, 74 C. C. A. 114; Walz v. Agricultural, etc., Co. (D. C.) 282 F. 646 (with very full citation of cases).

That plaintiffs in error joined in the defense of the Eastern District action, and did so openly and avowedly and for their own interest, is evident and not denied; and at this trial it was proved that what the nine insurers did in this instance has long been almost universally done, at least in the metropolitan district, if more than three insurers are concerned in a fire loss.

In Elliott v. Roto, 242 F. 941, 155 C. C. A. 529, we held that it was enough if the conduct of defense by a third party was open and avowed. It was not further necessary that the conduct must be known to the opposite party. But we agree with defendant in error that, at the trial in the Eastern District case, if not before, the insured was fully apprised of exactly how the defense in all the suits was being conducted. In short, no difference can be found between this litigation and the cases cited in principle, and several of them present substantially similar facts.

[2] We are told that, since jurisdiction herein rests upon diversity of citizenship, we are "administering the law of New York," and that the decisions in Fish v. Vanderlip, 112 N. E. 425, 218 N. Y. 29, Ann. Cas. 1916E, 150, and Fish v. Iselin, 114 N. E. 1067, 219 N. Y. 632, are opposed to the rulings we have cited from the national courts. While we incline to think that these cases are not, when carefully examined, opposed to the doctrine first above set forth, the matter is one of general law, and is neither statutory nor local. On such a point it no longer needs citation to show that the courts of the United States are not controlled by state decisions.

We are also told that Bigelow v. Old Dominion, etc., Co., 32 S. Ct. 641, 225 U. S. 111, 56 L. Ed. 1009, Ann. Cas. 1913E, 875, has either overruled the cases first above cited or is inconsistent with them and later in date. We look upon that decision as perfectly illustrating the difference between regarding another man's case as an important *test* of the law of one's own litigation, and agreeing with other men to act together and pay together in respect of all the litigation of the agreeing parties. The first act may be likened to visiting and advising an ally; the second act amounts to joining that ally's army. We therefore ·decide the present case in conformity with the rule stated, but shall briefly examine the reason and implications of that rule.

Estoppel is too convenient a word; it has come to be used with such vagueness as at times to induce belief that it has passed beyond the legal vocabulary and become like "demur," a word of the literary language. Even a lawyer may say that he demurs to something just said, when he means no more than that he hesitates to accept it as truthful or accurate; and so "estop" is used somewhat elliptically, to signify that the person estopped is for any one of all assignable reasons prevented from doing or saying what he wishes to do or assert.

Estoppel cannot be used in formulating legal documents with any such laxity, and a glance at the law lexicons, or such a collection of descriptions, rather than definitions, as may be found in 21 C. J. 1061, will show that if, e. g., in this case it be asserted, as it has been, that these six companies are estopped by what they have done, it is necessary to proceed and state what kind of estoppel affects them, and effects the prevention. Admittedly the defense of the Eastern District action in the manner and for the reasons set forth in the pooling agreement is the matter relied on; but the question remains: What kind of an estoppel is thus produced?

Undoubtedly it is an estoppel equitable or in pais, the identity and history of which terms are very well set forth in Horn v. Cole, 51 N. H. 287, 12 Am. Rep. 111. But an equitable estoppel is an equitable right, if not a remedy, and so it has been many times said—we said it in Elliott v. Roto, supra—that an estoppel must be mutual. If this phrase be taken, not as a short description of one, but not the only, test of a good estoppel, then a case can be stated from the history of this litigation which requires answer.

The Eastern District action was twice tried. On the first trial the jury returned a verdict for so small an amount, and that amount under the pleadings was so derogatory to the character of the plaintiff's officers or agents, that the trial judge set it aside as inadequate. Had that verdict stood, and judgment been entered, would the insured have been thereby prevented from pressing for a more favorable verdict in the Southern District? If estoppel is the only word describing the status produced by what happened in the Eastern District, and estoppels must be mutual, it is hard to assign any reason for an affirmative answer to the question last put; and if the affirmative answer be right, then the voluntary act of the nine defendants, done wholly for their own benefit and advantage, and without any view either to the harm or benefit of the insured, created a *mutual* right, no possible act or protest by the insured could have prevented the creation of such mutuality.

Again, if estoppel be the only word, then the Waterman Company undoubtedly set up an estoppel when it filed the supplemental complaint herein; yet one encounters the ruling so often made, as in Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868, that no one can set up an estoppel in pais but one who has been misled to his injury, and that either party to this litigation was ever misled by anything that the other did at any time cannot be asserted on this record. Considerations such as these, which might be multiplied, compel belief that, before the word "estoppel" should be applied to a state of facts, both the word and the facts should be studied with some care.

[3] We think the best statement of the fundamental nature of a true estoppel of any kind (it is not that exclusive finality, a definition) is given by Mr. Herman in his work on Estoppel and Res Judicata. He asserts that any estoppel results from something which the law treats as an admission of so high and conclusive a nature that the party making it is not allowed to aver against it or

offer evidence to controvert it. We agree with Herman's statement of the factum out of which estoppel grows; and how mutuality can necessarily be ascribed thereto, or how mutuality can be used as a certain test of an estoppel's existence, it is impossible to perceive.

The foregoing has been written to explain our refusal, in deciding this case, to precisely cover the point of lack of mutuality pressed on us at bar. When Dean Pound and other leaders of legal teaching habitually speak of "the *arbitrary* doctrine of mutuality of remedy in equity" as an outworn precept, and when Cardozo, J., writes on the same subject for a most important court, as he did in Epstein v. Gluckin, 135 N. E. 861, 233 N. Y. 490, it is safe to say that, if the law is not changing on the subject treated, very able efforts are making to change it; wherefore, if there exist grounds for decision other than a theory of estoppel predicated upon the necessity of mutuality, that ground should be chosen; for under our system nothing is gained by anticipating what is sure to come soon enough, and expressing opinion about legal questions not absolutely necessary for judgment.

[4] We hold that the true line of decision here is this: By the pooling agreement and their conduct under it the nine insurers became privies to the Eastern District suit. One man becomes privy to another when he agrees to be bound by the act of a third person; and these six insurance companies at bar agreed to be bound by the acts of the other three insurers in defending the Eastern District suit. There was privity in contract. Woods v. Ayres, 39 Mich. 345, 33 Am. Rep. 396; Hartley v. Phillips, 47 A. 929, 198 Pa. 9.

It cannot be doubted that the six companies would be liable for their pro rata shares of the Eastern District judgment, and liability could be enforced against them by the three companies who paid. The relation is in some respects that of suretyship, and privity of contract is enforceable even by a third person, as in cases of which Towle v. Towle, 46 N. H. 431, is a good example. Despite the occasional use of the word "estoppel" in the ruling cases first above set forth, we feel assured and hold that the true ground of decision was that all the possible defendants united in the defense of one action under circumstances which made them privies to the judgment rendered in that action. That is enough for the purposes of this case.

If the matter be regarded as one of privity, the doctrine appealed to is that of res adjudicata, and it seems to us quite clear that a judgment must be equally binding, no matter who wins the case. But it is enough for this litigation to hold that, because plaintiffs in error were privy to the suit and the judgment therein in the Eastern District, they are bound by it, and that means that they can never deny that the plaintiff below was not guilty of the breaches of contract charged in the answer, and that the goods injured were worth the amount found by that jury. The rest, of course, is mere matter of computation. This view of privity has grown; in 1789 the verdict in the Eastern District would have been evidence in the Southern, but not conclusive. Patton v. Caldwell, 1 Dall. (Pa.) 419, 1 L. Ed. 204.

Judgment affirmed, with costs.