## CATERPILLAR TRACTOR CO. v. INTERNATIONAL HARVESTER CO.

### Nos. 7461, 7462.

Circuit Court of Appeals, Third Circuit.

May 16, 1941.

---

Charles M. Fryer, of San Francisco, Cal. (Alfred C. Aurich, of San Francisco, Cal., and William H. Campbell, Jr., of Newark, N. J., on the brief), for plaintiff.

Josiah Stryker, of Newark, N. J. (William S. Elliott, George L. Wilkinson, and Charles L. Byron, all of Chicago, Ill., on the brief), for defendant.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

Plaintiff, Caterpillar Tractor Co., brought this suit against the International Harvester Company alleging the infringement of four patents and praying for money damages and an injunction against further infringement. In its complaint plaintiff alleged that International was the real defendant in a prior suit [1] brought by the plaintiff in the Federal District Court in Nevada against Reinharts, Inc., involving the same claims of the same patents here sued upon. Based on admissions in the defendant's answer and certain depositions, plaintiff moved for judgment as prayed for in the complaint. The court below rendered a judgment from which both sides appeal.

The court held that the judgment in the Nevada suit was res judicata as to the validity of the claims of the patents in issue and the defendant's infringement thereof. As to the defenses of laches and estoppel, raised by an amendment to the defendant's amended and supplemental answer, with respect to Turnbull patent No. 1,304,416, the court below held that the Nevada judgment was not conclusive and directed that the plaintiff's right to an accounting [2] abide the determination of the issues raised by these defenses. As to two of the other patents, [3] Holt No. 1,314,651 and Wickersham No. 1,356,679, the court held that plaintiff was entitled to an accounting, but directed that it be postponed until the determination of the issues raised with respect to the Turnbull patent, or until further order of the court. With respect to the claims in issue of the fourth patent, Whiteacre No. 1,744,516, an accounting was directed as for the Holt and Wickersham patents and the defendant was enjoined from further infringement.

[1] Reinharts, Inc. v. Caterpillar Tractor Co., 9 Cir., 85 F.2d 628, certiorari denied 302 U.S. 694, 58 S.Ct. 13, 82 L. Ed. 536.

[2] Since this patent had already expired the plaintiff was not entitled to any injunctive relief with respect to it. Walker on Patents, Deller's Ed.1937, § 789.

[3] These two patents had also expired.

## Defendant's Appeal.

The defendant's appeal presents a single clean-cut issue of law and will be considered first. The International Harvester Company was not a party to the suit in Nevada, the effect of which concerns us here. The action in the Nevada suit was brought against a dealer who sold tractors manufactured by International. International, however, admits that it retained counsel to conduct the defense on behalf of the dealer and paid the entire expense of the defense and that the patent department of International cooperated with the counsel so employed in furnishing information and assembling evidence.

International states the question involved in this appeal thus: May a judgment be res judicata as to a person not a party who defended the suit on behalf of the record defendant where such participation was not open and avowed to the knowledge of the plaintiff during the pendency of the suit? This issue, if decided in the affirmative, disposes of International's appeal in this action. Since this court concludes that the answer to the question thus posed is in the affirmative, it is unnecessary to go into the question whether the evidence is sufficient to establish that the defendant openly and avowedly defended the suit in Nevada or to consider the consequences of a finding in the Nevada case to that effect.

The argument for International concedes that if its defense in the Nevada suit had been open and avowed and the plaintiff knew of it, then the judgment therein would bind it by way of collateral estoppel, [4] even though it was not actually a party. But, it contends, even though it was in complete charge of the litigation, serving its own interest therein, it is not bound unless its defense was open or the plaintiff knew of it. As a matter of legal principle this is a very difficult position to maintain. The general principle back of the rules of res judicata has received recent and clear statement by the Supreme Court. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties." Baldwin v. Iowa State Traveling Men's Association, 1931, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244. A litigant is to have his day in court, but only one day in court, against another. The defendant here is in the position of asking for two days in court if he successfully masked his participation upon his first appearance. That the doctrinal basis of res judicata is living law and not archaic formula is shown in its authoritative extension in recent years. American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298; Davis v. Davis, 1938, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed 26, 118 A.L.R. 1518; Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. An argument which seeks to establish a rule directly contrary to this broad principle must justify itself pretty clearly to be successfully maintained.

If Caterpillar had lost in the Nevada litigation and International were now endeavoring to take advantage of the rule of res judicata against the unsuccessful plaintiff, then the open and avowed rule would be applicable. The reason is that to allow the secret defendant to have the advantage of the rule would be "to force a plaintiff to prosecute to the utmost suits which, for personal or pecuniary reasons, he wishes to let slide." 39 Columbia Law Review 1251, 1252. Such was the situation in the litigation in this circuit culminating in the decision in Jefferson Electric Light, Heat & Power Company v. Westinghouse Electric & Manufacturing Company, 3 Cir., 1905, 139 F. 385. The defendant in that case sought to conceal his identity throughout the original litigation and then subsequently

---

[4] This term, while still a novel one in the law, is useful and appropriate to describe one of the effects of a judgment, frequently included under the general term "res judicata." The effect of a judgment appears in at least three aspects. There is: (1) Merger, by which a judgment for the plaintiff merges his cause of action, so that the original cause of action is terminated and a cause of action on the judgment takes its place. (2) Bar, by which a judgment for the defendant terminates the original cause of action. (3) Collateral estoppel, by which questions of fact and perhaps of law actually litigated in the action are conclusively determined in subsequent actions in which the same questions arise, even though the cause of action may be different. This terminology is being used in the Restatement of Judgments now in preparation. See Restatement, Judgments (Tent. Draft No. 1) § 308.

to have the benefit of the rule of res judicata when the plaintiff lost. We do not question the correctness of that decision.

But it does not follow that because the defendant's participation must be known in order for him to have the benefit of the judgment, that his participation must be known in order that he be bound by it. The open and avowed rule has frequently been stated, but, as pointed out by the court below, most frequently in cases like that of the Jefferson Electric decision cited above. While in more cases than not the binding effect of a judgment is mutual, there is nothing in the nature of things which requires mutuality if fairness demands otherwise. Lip service to the doctrine of mutuality in matters of specific performance distorted the law for years until a notable paper by Dean Ames laid it low. See James B. Ames, Mutuality in Specific Performance, 3 Columbia Law Review 1 (1903).

We conclude that both fairness to the parties involved and the general public policy back of the rules of res judicata preclude the defendant in this case from relitigating the issues already contested and settled in the Nevada action. This view finds support in the thorough discussion by the Court in Universal Oil Products Co. v. Winkler-Koch Engineering Co., D.C.,N.D., Illinois, 1939, 27 F.Supp. 161 (commented upon in an excellent note in 39 Columbia Law Review 1251) and the succinct statement of the rule in E. W. Bliss Co. v. Cold Metal Process Co., D.C.,N.D., Ohio, 1940, 1 F.R.D. 193, 196: "A party should not be estopped as against an adversary whom he never knew; but a secret adversary should be estopped if subsequently it is shown that he had made himself an adversary." The issue was squarely met and thoughtfully considered by the court below. We concur with the conclusion there reached. [5]

■■ An interesting intellectual question is presented concerning the theoretical basis for the effect to be given the judgment of a federal court in Nevada in a federal court in New Jersey. On the one hand it may be urged that the question is essentially one of faith and credit. The extent of the collateral consequences of a judgment is a matter of law and, in the absence of a statute, judge made law. The law must be the law of some sovereignty for nowadays we all reject the notion of law characterized by Mr. Justice Holmes as "a brooding omnipresence in the sky." Since Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487, there is certainly very limited scope for a "general common law" of the United States. Therefore the question of the effect of the prior judgment is to be determined in the first instance by the law of Nevada where the court rendering it sat. A judgment rendered by a federal court is entitled to the same faith and credit as one rendered by the court of the state where it is sitting. Hancock National Bank v. Farnum, 1899, 176 U.S. 640, 20 S.Ct. 506, 44 L.Ed. 619; Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S. Ct. 134, 83 L.Ed. 104. While the constitutional mandate of full faith and credit (Art. IV § 1) is applicable to the states only, the federal statute [6] requires faith and credit "in every court within the United States." The credit which this judgment must receive is that to which it is entitled "by law or usage" in the courts of the place where

---

[5] The tentative draft (No. 2) of the Restatement of Judgments, § 407, expresses the same view of the law. Such a draft does not carry the authority of the American Law Institute's position upon the point, but does show the views of the learned Reporters upon the current state of the law. The statement is: "A person who, although not a party, controls an action, individually or in co-operation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound."

[6] R.S. § 905, 28 U.S.C.A. § 687. "The acts of the legislature of any State or Territory, or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seals of such State, Territory, or country affixed thereto. The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

rendered. That is a matter of the common law of Nevada, but is a matter which has not, so far as we have been able to find, been dealt with by Nevada courts. In the absence of contrary local decisions the rule set out above is the one we believe to be sound and to which we give our approval.

On the other hand, the matter here is one between two courts of the same sovereignty, the United States of America. If one federal court failed to give effect to the judgment of another federal court the Supreme Court of the United States, as the head of the judicial system of the United States would compel it to do so because "they are many members yet but one body". An analogy is found in the conclusive effect in a federal court given to the fact finding of a federal administrative commission. Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263. No decisive language on the point has been found though one may refer, in passing, to the opinion of Mr. Justice Matthews in Embry v. Palmer, 1882, 107 U.S. 3, 9, 2 S.Ct. 25, 27 L.Ed. 346. See also Gunter v. Atlantic Coast Line R. Co., 1906, 200 U.S. 273, 284-289, 26 S.Ct. 252, 50 L.Ed. 477; Ormsby v. United States, 6 Cir., 1921, 273 F. 977.

Whichever route one travels he reaches the same destination. The choice of one to the exclusion of the other is, therefore, unnecessary in this case. Judge Biggs believes that the problem discussed in the preceding paragraphs presents no problem of faith and credit and that the recognition in one federal court of the decrees of another comes through the fact that both courts are arms of the same sovereignty.

### Plaintiff's Appeal.

■ This brings us to the questions raised by the plaintiff. It is contended first that the court below erred in excluding the defenses of laches and estoppel from the effect of the Nevada judgment. This point may not be raised in this court at this stage of the case. Clearly the judgment of the court below is not a final disposition of the case within section 128 of the Judicial Code, as amended, 28 U.S.C.A. § 225. Nor is the decree "final except for the ordering of an accounting" within the meaning of the 1927 amendment to section 129 of the Judicial Code, 44 Stat. 1261, 28 U.S.C.A. § 227a,[7] so far as the Turnbull patent is concerned, since the right to an accounting is conditioned upon the determination of the issues raised by the allegations of laches and estoppel.

■ The jurisdiction of this court rests in that part of section 129 of the Judicial Code, as amended, 28 U.S.C.A. § 227 which provides: "Where * * * an injunction is granted, continued, modified, refused, or dissolved by an interlocutory order or decree * * * an appeal may be taken from such interlocutory order or decree to the circuit court of appeals * * *." Although we have jurisdiction to review that part of the judgment having to do with injunctive relief, that does not bring before us any other part of the judgment. Ex parte National Enameling & Stamping Co., 1906, 201 U.S. 156, 26 S.Ct. 404, 50 L.Ed. 707; Sheldon v. Moredall Realty Corporation, 2 Cir., 1938, 95 F.2d 48.

■ Plaintiff's second contention in this court is that the judgment of the court below is too limited. In so far as this contention raises the question whether the injunction is too narrowly restricted and thus denies the plaintiff injunctive relief to which it claims to be entitled, this court has jurisdiction to consider it. Ward Baking Co. v. Weber Bros., 3 Cir., 1916, 230 F. 142; Lyon Lumber Co. v. Livingston Parish School Board, 5 Cir., 1923, 286 F. 114.

The District Court decreed: "4. That an injunction issue enjoining and restraining the defendant, its officers, agents, servants and employees and those in active concert or participation with them and each and all of them from making, using, selling or causing to be made, used or sold any tractor of the identical construction of said tractor No. TT-1637 or any tractor of substantially the same construction as tractor No. TT-1637, with regard to Claims 5, 26, 27, 28, 29, 30, 31 or 36 of the Whiteacre letters patent No. 1,744,516."

■ The gist of the plaintiff's complaint seems to be that this is not the usual form of language used in such injunctions. But of course there is no sanctity in any particular form of words and if plaintiff's substantive rights have been satisfied, there is no ground for interference by this court. Plaintiff argues that under the language of the judgment the defendant may produce a

---

[7] "When in any suit in equity for the infringement of letters patent for inventions, a decree is rendered which is final except for the ordering of an accounting, an appeal may be taken from such decree to the circuit court of appeals."

tractor infringing all of the claims of the Whiteacre patent held valid if the tractor is of substantially different construction in other respects. There is no merit in this contention since the prohibition is against the making, using or selling of any tractor whose similarity to the examplar is in points of construction disclosed in the specified claims of the Whiteacre patent.

There is more substance to the argument that a tractor might be produced infringing some but not all of the enumerated claims of the Whiteacre patent and not come within the scope of the language used by the court below. Therefore the judgment will be modified by inserting the phrase "or any of them" after the words "Claims 5, 26, 27, 28, 29, 30, 31 or 36" in paragraph four of the judgment of the court below.

As so modified the judgment is affirmed in so far as it relates to Patents Nos. 1,-314,651; 1,356,679 and 1,744,516. In so far as they relate to those portions of the judgment having to do with Patent No. 1,304,416, the appeals are dismissed as premature. Each party is to bear his own costs.