NEWPORT NEWS SHIPBUILDING
AND DRYDOCK COMPANY
et al., Plaintiffs,

v.

SEABOARD MARITIME CORPORA-
TION et al., Defendants.

Civ. A. Nos. 1597, 1909.

United States District Court
D. Delaware.

April 2, 1958.

Henry M. Canby (of Richards, Layton & Finger), Wilmington, Del., and Ralph L. McAfee and Allen F. Maulsby (of Cravath, Swaine & Moore), New York City, for plaintiffs.

John Van Brunt, Jr. (of Killoran & Van Brunt), Wilmington, Del., and Hans A. Nathan (of Trammell, Rand & Nathan), Washington, D. C., for defendant, Seaboard Maritime Corp.

William Poole (of Berl, Potter & Anderson), Wilmington, Del., and Edward H. Cushman, Philadelphia, Pa., for defendant, Peerless Casualty Co.

**WRIGHT, Chief Judge.**

This matter is before the court on defendant Seaboard's motion for summary judgment limited to the issue of liability.[1] The present suit was instituted as a consolidated contract action by five Shipyards (Yards)—Newport News Shipbuilding and Drydock Company (Newport News), Sun Shipbuilding & Dry Dock Co., (Sun), The Ingalls Shipbuilding Corporation (Ingalls), Bethlehem-Sparrows Point Shipyard, Inc., (Bethlehem-Sparrows), and Bethlehem Steel Company (Bethlehem Quincy)— against Seaboard Maritime Corporation (Seaboard), designer and manufacturer of hatchcovers and its surety, Peerless Casualty Company (Peerless). The named plaintiffs aver in their respective complaints that Seaboard failed to construct and deliver hatchcovers pursuant to individual contracts executed between each Yard and Seaboard.

Prior to the commencement of the instant suit, defendant, Seaboard, initiated a combined tort and contract action against Bethlehem Quincy, one of the plaintiffs herein named, in the United States District Court for the Northern District of Florida.[2] There, Bethlehem Quincy counterclaimed alleging, inter alia, breach of contract by Seaboard. The Florida Court held as a matter of law Bethlehem Quincy was estopped to prove the identical contractual claim asserted by it in the immediate action.

Seaboard contends the estoppel invoked by the Florida Court is similarly binding on the present plaintiffs, premising its position on the doctrine of res judicata and its pertinent aspects of bar and collateral estoppel.[3]

---

1. F.R.Civ.P. 56(c), 28 U.S.C.

2. Seaboard Machinery Corp. v. Bethlehem Steel Co., D.C.N.D.Fla.1956, 145 F.Supp. 285.

3. Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 1941, 120 F.2d 82, 84, footnote 4, 139 A.L.R. 1:

   "The effect of a judgment appears in at least three aspects. There is: (1) Merger, by which a judgment for the plaintiff merges his cause of action, so that the original cause of action is terminated and a cause of action on the judgment takes its place. (2) Bar, by which a judgment for the defendant terminates the original cause of action. (3) Collateral estoppel,

██ Bar may be relied upon defensively by a party or privy to a legal controversy if these elements are present:[4]

1. A prior suit which has been adjudicated on the merits.

2. The cause of action in the prior suit is identical with the cause submitted in the subsequent litigation.

3. The parties and/or privies in both actions are the same.

Collateral estoppel precludes the relitigation of specific issues in a second suit.[5] For the invocation of this doctrine the first and third requisites of bar need be present.[6]

██ There is an aspect of the problem which has not been touched upon by the litigants in their briefs, nor has it been heretofore discussed at any pre-trial conference. Jurisdiction of both this court and the Florida Court was premised on diversity of citizenship. Under the line of authority commencing with Erie R. Co. v. Tompkins diversity requires conformity to the substantive practices of the state wherein lies the Federal Court.[7] Hence, the judgment interposed by Seaboard as a bar to the immediate action is essentially a decree of the State of Florida.[8] It would therefore appear that pleading the Florida judgment ceases to be a matter solely of res judicata but also one of enforcibility and effect to be accorded a foreign judgment.[9]

██ The law of foreign judgments, in essence is bottomed on the concepts of res judicata,[10] but there are, nevertheless, real differences. This is apparent when one attempts to apply the line of precedent advanced by Seaboard to the present setting. Many of the decisions cited are pre-Erie and matters peculiarly

by which questions of fact and perhaps of law actually litigated in the action are conclusively determined in subsequent actions in which the same questions arise, even though the cause of action may be different. This terminology is being used in the Restatement of Judgments now in preparation. See Restatement, Judgments (Tent. Draft No. 1) § 308."
The first aspect, namely, Merger is not herein applicable.

4. Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122, wherein the court states: "The basic distinction between the doctrines of *res judicata* and collateral estoppel, * * * has frequently been emphasized. Thus, under the doctrine of *res judicata*, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit. * * * *"

5. Notes 3 and 4, supra.

6. Note 4, supra. Under certain circumstances it is unnecessary to meet the party and/or privy requirement for there is a complete area of res judicata affording stranger reliance on prior adjudications. 65 Harv.L.Rev. 818, 861 (1952).

7. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 128 A.L.R. 394, certiorari denied 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415; Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Behrens v. Skelly, 3 Cir., 1949, 173 F.2d 715; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Blum v. William Goldman Theatres, Inc., 3 Cir., 1948, 174 F.2d 914.

8. Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F.2d 82, 85, 86. So far as Judge Goodrich's discussion is applicable to a Federal diversity court this opinion adopts the jurist's remarks. With deference, however, the court adheres to Judge Biggs' observation "they are many members yet but one body", where jurisdiction is premised on matters peculiarly cognizable in a Federal forum.

9. Bata v. Hill, Del.Ch.1958, 143 A.2d 728: The court classifies foreign judgments as (1) International and (2) Interstate. This opinion examines foreign judgments in the interstate context.

10. Tolley v. Wilson, 1947, 212 Ark. 163, 205 S.W.2d 177, 179.

cognizable in Federal courts.[11] If the rationale of res judicata alone is applied the authorities urged by Seaboard are formidable, since the internal law of the forum is invoked. But when the foreign judgment approach is explored the cases advanced are considerably weakened for it is the conflict rules of the state, wherein sits the federal diversity court, that determine the appropriate decisional law to be employed as authoritative precedent.[12]

If the foreign judgment approach be sound, the court must determine in accordance with the conflict rules of Delaware what law to apply.[13] Section 450 of the Restatement of Conflicts provides:

"§ 450. Effect of Valid Foreign Judgment.

"(1) The effect of a valid judgment upon the rights or other interests of the parties and persons in privity with them is determined by the law of the state where the judgment was rendered.

"(2) The effect of a valid judgment as a conclusive adjudication between the parties and persons in privity with them of facts which were or might have been put in issue in the proceedings is determined by the law of the state where the judgment was rendered."

An examination of Delaware decisional law indicates no aversion to applying Section 450 of the Restatement of Conflicts in the realm of interstate judgments.[14]

Adhering to these principles necessitates an examination of relevant Florida pronouncements. Thus Florida holdings adverse to the position enunciated by Seaboard would render the authority proffered innocuous.[15]

In addition to the above discussion, Section 450, Restatement of Conflicts, comment d. poses more serious problems:

"d. *Law governing who are privies.* A judgment is valid only as against parties who were subject to the jurisdiction of the court which rendered the judgment and persons in privity with them. The law of the state where a valid judgment is rendered determines who are in privity with the parties to the judgment. If by the law of a state, privity is imposed upon persons over whom the state has no jurisdiction, the judgment is to that extent invalid (see § 429). As to liability of a shareholder imposed by the state of incorporation, see §§ 185, 186."

The issue whether Newport News, Sun, Ingalls and Bethlehem-Sparrows are in privity with Bethlehem Quincy is the thrust of Seaboard's contentions for none of the Yards with the exception of Bethlehem Quincy was a named party in the Florida action.[16] Application of comment d. language might interpose constitutional questions to an already complex litigation.[17]

This issue need not be resolved for accepting the theory of res judicata pur-

11. Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 1941, 120 F.2d 82; Columbia Insurance Co. of New Jersey v. Mart Waterman Co., 2 Cir., 1926, 11 F.2d 216; Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 75 S. Ct. 865, 99 L.Ed. 1122.

12. Blum v. William Goldman Theatres, Inc., 3 Cir., 1948, 174 F.2d 914; Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 138, 1 A.L.R.2d 370.

13. Behrens v. Skelly, 3 Cir., 1949, 173 F. 2d 715.

14. Note 9, supra.

15. For relevant Florida decisions see: Coral Realty Co. v. Peacock Holding Co.,

1931, 103 Fla. 916, 138 So. 622; Smith v. Urquhart, 1937, 129 Fla. 742, 176 So. 787.

16. Identity of parties and/or privies is an essential element of both bar and collateral estoppel. See notes 3 and 4, supra.

17. The penultimate sentence of § 450d. causes the court some concern; for if a judgment of a court cannot be binding on persons outside the jurisdiction of the state, it would seem violative of procedural due process for a foreign forum to accord greater efficacy to a decree than the adjudicating court. See Bigelow v. Old Dominion Copper Mining & Smelting Co., 1912, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009.

sued by defendants, litigation cannot be precluded except as to the already determined Bethlehem Quincy cause and with the possible exception of the Bethlehem-Sparrows' claim which for reasons subsequently noted will not be disposed of by the present motion. The remaining portions of the opinion are therefore substantially adressed to the merits of the allegations advanced by defendants, Seaboard and Peerless.

Prior to discussing the legal implications of bar and collateral estoppel a limited area of background material is deemed essential to properly delineate the issues.[18]

The five plaintiffs in the instant action are large shipbuilders, often enlisted in emergencies by the Federal Government to supply the various armed forces with the vessels they require. In late 1950 and early 1951, the United States Maritime Administration embarked on a program to increase cargo tonnage. Each of the Yards was awarded a contract to construct five cargo vessels. An essential component of these ships was hatchcovers. The individual Yards requisitioned the necessary covers from Seaboard of New Jersey, defendant's predecessor. Five distinct purchase orders emanating from the offices of the several Yards were the method of requisition.

Seaboard constructed and delivered to the Yards only 10 of the total 25 sets of covers that were promised. The Yards by payment of $300,000 to Williamsburg Steel Fabricators, Inc., a Seaboard subcontractor, received an additional 5 sets of covers.

When it developed that Seaboard could not meet the scheduled delivery dates, the Yards by separate letters sent during March and April, 1953 notified Seaboard and Seaboard's surety, Peerless, that Seaboard had defaulted on its obligations. Subsequently, by agreement dated June 1, 1953, the Yards acquiesced in a plan to award the remaining hatchcover work to Hingam Shipbuilding Co. a subsidiary of Bethlehem Steel Corporation,[19] the costs to be shared pro rata. By a further understanding the Yards agreed to share certain costs and recoveries incident to hatchcover procurement including:[20]

"(iv) Any liabilities that may be sustained by any of the Yards to Seaboard or to Peerless arising out of the procurement by the Yards of hatchcovers for mariner type vessels and

"(v) the expenses directly incident to any actions or other legal proceedings that shall be instituted subsequent to the date of this letter for the purpose of asserting the claims of the Yards referred to above

"and by deducting from the sum of such items the aggregate of any amounts which shall be recovered by any of the Yards from Seaboard or Peerless on account of the claims of the Yards referred to above, * * *."

In August, 1953 Seaboard commenced the Florida action referred to supra,[21] against Bethlehem Quincy seeking quantum meruit, breach of contract, and tort recoveries.[22] Yard actions were commenced in New York, the District of Columbia, the State Court of Delaware, and this court. By stipulation all suits have been consolidated in the instant proceedings.[23]

In summary, the present posture of the controversy is as follows: Five Shipyards contracted individually for identi-

18. The background material is merely set forth to afford clarity, and in no manner should be taken as peremptory findings of the court.

19. Bethlehem Steel Corporation of Delaware, the parent company.

20. Bethlehem Quincy letter of July 1, 1953 confirmed by Newport News, Sun, Ingalls and Bethlehem-Sparrows.

21. Note 2, supra.

22. Seaboard Machinery Corp. v. Bethlehem Steel Co., D.C.N.D.Fla.1956, 145 F.Supp. 285.

23. Order of Consolidation dated October 16, 1957.

cal hatchcovers from one supplier. The supplier allegedly failed to perform as agreed. A formal understanding among the Yards that the costs of litigation to redress their rights were to be shared proportionally as well as any recovery or liabilities incurred. A final adjudication by a Federal District Court that one of the present plaintiffs was estopped to pursue contract damages. The initiation of the immediate action by the five Yards seeking loss of bargain recovery. A plea by defendant, Seaboard, that the adjudication denying recovery to one of the claimants is similarly binding on the other plaintiffs.

The doctrine of bar is traditionally applicable where it appears the parties and the claims asserted in consecutive litigations are the same. Thus, so far as the action prosecuted by Bethlehem Quincy the classical indicia are present. In fact, counsel for plaintiffs concede that the Florida suit effectively disposes of Bethlehem Quincy's cause.[24] Hence, there remains for consideration the claims advanced by Newport News, Sun, Ingalls and Bethlehem-Sparrows.

Proceeding from the rather rudimentary invocation of the doctrine to the more complex applications has caused courts much concern.[25] Seaboard urges that the concept is sufficiently flexible to encompass multiple claims and parties not before the adjudicating court.

To conform with the cause of action identity requirement Seaboard suggests that the court adopt the definition announced in Williamson v. Columbia Gas & Electric Corp.,[26] namely, causes of action are the same where the operative facts in both litigations coincide. Assuming, arguendo Seaboard meets the test it enunciates, this concept cannot be

deemed controlling upon the court, for any attempt to produce a definitive meaning in this area by precedent is fruitless. As observed in 65 Harv.L.Rev. 825:[27]

"Precedent is haphazard in this field; on a given set of facts there seems to be at least one rule to buttress any result, and the same tests often can sustain opposite positions. * * * "

The article previously demonstrated this statement by describing the divergent rules courts have adopted.[28]

"Various rules for determining whether the second action is foreclosed have been suggested. Among the most common are that the causes of action are the same if: (a) the same principles of substantive and procedural law are applicable to both actions, (b) the same right is alleged to be infringed by the same wrong in both actions, (c) the judgment sought in the second action would infringe rights established in the first, (d) the same evidence would support both actions, or (e) the operative facts are the same in both actions. * * * "

This court will not attempt to increase the already existing confusion by formulating a novel doctrine. It suffices that under the facts as presented the court cannot deem actions arising from individual contracts identical, despite protestations that a single act of non-performance gave rise to the claims. A contract is an inviolate compact consummated by competent parties. Certain duties and obligations are created from the mutual understandings of the participants. Enforcement by legal methods to secure fulfillment of the bargain is an implied right of contract. A deprivation

---

24. Memorandum on behalf of Newport News, Sun, Ingalls and Bethlehem-Sparrows in opposition to Seaboard's motion for partial summary judgment at page 2: "We agree (and have affirmatively asserted before this court on every possible occasion) that the Bethlehem (Quincy) cause of action has been finally adjudicated by the Florida Court, and that the Seaboard motion is therefore proper-

ly made against Bethlehem (Quincy)." (Quincy supplied)

25. 65 Harv.L.Rev. 818 (1952); 91 U. of Pa.L.Rev. 467 (1943).

26. 3 Cir., 1950, 186 F.2d 464.

27. 65 Harv.L.Rev. 818, 825 (1952).

28. 65 Harv.L.Rev. 818, 824–825 (1952).

of this sanction should only be permitted in narrow confines. The reasons proffered are insufficient to justify an exception to the principles declared.

■ Since the decision of the court is that each contract created a separate cause there is no need to consider the privity requirement for the absence of cause identity, forecloses reliance on bar.[29]

The applicability of collateral estoppel requires a more extended commentary. With respect to the claims asserted by the non-Bethlehem Yards—Newport News, Sun and Ingalls—Seaboard's position is inadequate to afford relief. To sustain the burden of preclusion the estoppel determination of the Florida court must permeate each demand under discussion.

■ The forum is afforded wide latitude in determining the issues found by a prior adjudicating court.[30] This court concludes that the underlying basis for the invocation of estoppel was premised on the following:

1. There was an appropriation, setting aside or dedication of the Panama production to the use of Bethlehem Quincy and Bethlehem-Sparrows.

2. With the expressed assent or acquiescence of Bethlehem Quincy this production was diverted to Seaboard's other customers.

3. It would therefore be unfair to permit Bethlehem Quincy to maintain Seaboard breached its contract.

To substantiate these findings attention is directed to that portion of the Florida court's memorandum opinion which states: [31]

"As heretofore pointed out, defendant furnished practically all steel used in the construction of the ten shipsets of hatch covers at the Panama City plant of plaintiff. The evidence in the case clearly shows that defendant and its affiliate Bethlehem Sparrows Point Shipyard Company claimed and asserted title to these ten shipsets of hatch covers on the ground it had furnished the steel for their construction and the two shipyards had paid for them, and plaintiff throughout the trial of this case claimed that it had at all times and did then freely and gladly acquiesce therein. However, the parties during the entire construction program were fully aware of the fact that under the law and rules and regulations controlling scarce materials then in effect, the National Production Authority had the right to say where every hatch cover produced by plaintiff at Panama City or elsewhere should be sent. Realizing this and to keep National Production Authority out of the picture and to meet the demands of the other shipyards that were pressing plaintiff for the delivery of hatch covers under their contracts, defendant at least acquiesced in if it did not in fact direct plaintiff to deliver to it only three shipsets of hatch covers and to its Bethlehem Sparrows Point affiliate only two shipsets of hatch covers and distributed the remaining five shipsets of hatch covers among three of the other shipyards, Newport News Shipbuilding and Dry Dock Company and Sun Shipbuilding and Dry Dock Company getting two each and Ingalls Shipbuilding Corporation getting one."

Seaboard's assertion that the ruling considered many factors, namely, non-availability of steel, maritime and NPA

29. Seaboard contends the agreement by the Yards to share litigation costs and recoveries placed the concurring parties in privity. Since Bethlehem-Sparrows, Ingalls, Sun and Newport News were not named parties in the Florida litigation they would be bound as privies only if all of the essential elements of bar were present. The element of cause identity being absent the privity argument need not be resolved.

30. Old Charter Distillery Corp. v. Continental Distilling Corp., D.C.Del.1956, 138 F.Supp. 473.

31. Seaboard Machinery Corp. v. Bethlehem Steel Co., D.C.N.D.Fla.1956, 145 F.Supp. 285, 288–289.

directives, novation, actual, constructive or substantial performance and other legal doctrines is untenable; for the finding of any one of these concepts is sufficient to singularly defend a contract action. To adopt Seaboard's position would relegate the Florida holding to mere surplusage.

In accordance with the foregoing, the court holds the estoppel finding of the Florida court was peculiar to the Bethlehem Yards and in no manner can be deemed binding on the claims of Newport News, Sun and Ingalls. It is the personal nature of the estoppel that effectively distinguishes the instant facts from the line of authority developed by defendants.[32] In the decisions cited, no case presented matters sought to be precluded which were personal to only one of the litigants.

The claim of Bethlehem-Sparrows poses different considerations for it presents squarely the question of privity. Since certain essential elements aside privity were lacking in the other Yards' claims, there was no need to previously rule on the issue. Bethlehem-Sparrows by virtue of the Florida court's language and other factors cannot avail itself of the position maintained by the non-Bethlehem Yards.[33]

The court feels, however, the applicability of collateral estoppel re Bethlehem-Sparrows should not be resolved before counsel have an opportunity to argue the pertinency of the aforementioned doctrine of foreign judgments.

There is another matter, procedural in nature, which militates against a dispositive determination of the present motion relevant to the Bethlehem-Sparrows claim. Heretofore Peerless Casualty Company, Seaboard's insurer has submitted an uncontradicted affidavit and certain pre-trial exhibits tending to show that Bethlehem-Sparrows, in its relations with Seaboard relevant to hatch-cover procurement, acted through the purchasing agent of Bethlehem Quincy, one R. B. Mayo.[34] In rebuttal, counsel for plaintiffs have conceded arguendo, that this was the case but maintained the legal burden for invocation of collateral estoppel had not been sustained.[35] In view of the essential requirement on motion for summary judgment that there be no dispute of material fact it is questioned whether plaintiffs' concession arguendo meets the rigid standard of the rule.

Although the movant may have technically shouldered its burden so far as the Bethlehem-Sparrows action, the posture of the proceedings with respect to this plaintiff is something less than lucid, and since the foreign judgment matter has not been explored by counsel, the court, in the exercise of its discretion, will deny the motion pertaining to the claim of Bethlehem-Sparrows.[36]

In accordance with this opinion:

(1) Bethlehem Quincy is barred from maintaining its action. The motion to dismiss is granted.

(2) Newport News, Sun and Ingalls will be permitted to assert their claims. Defendant Seaboard's motion for summary judgment as to these Yards is therefore denied.

(3) Seaboard's motion with respect to Bethlehem-Sparrows is denied. An appropriate motion at a proper time will be entertained upon further clarification of the issues herein raised by the court.

An order in conformity herewith may be submitted.

32. Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 1941, 120 F.2d 82; Universal Oil Products Co. v. Winkler-Koch Engineering Co., D.C.N.D.Ill. 1939, 27 F.Supp. 161; Columbia Ins. Co. of New Jersey v. Mart Waterman Co., 2 Cir., 1926, 11 F.2d 216; Cf. Hinkley Motors & Parts Corp. v. General Ins. Co., D.C.S.D.N.Y.1931, 53 F.2d 1068.

33. Note 31, supra.

34. Cushman Affidavit, Oct. 17, 1957; Peerless Pre-trial Exhibits re Bethlehem-Sparrows Point.

35. Plaintiffs' Supplemental Memorandum on behalf of Bethlehem-Sparrows Point in opposition to Seaboard motion for partial summary judgment, p. 19.

36. 6 Moore's Fed.Prac. 56.15(6).